IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HÉCTOR LUIS O'FARRIL LAMB;** <br><br> Plaintiff, <br><br> v. <br><br> **AMERICA CRUISE FERRIES, INC.; BAJA FERRIES USA; BAJA FERRIES S.A. de C.V.; STEAMSHIP MUTUAL MANAGEMENT (BERMUDA) LTD; THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED (BERMUDA); THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED;** <br><br> Defendants. | CIVIL NO. 16-2741 <br><br> JURY TRIAL DEMANDED |

**COMPLAINT**

**TO THE HONORABLE COURT:**

NOW COMES the Plaintiff, **Héctor Luis O'Farril Lamb;** through the undersigned attorneys and respectfully alleges and prays as follows:

**I. INTRODUCTION**

1. This is a federal question action filed by Plaintiff to redress his injuries suffered due to the intentional and/or negligent acts committed by defendants, related to a chain of negligent acts occurred between August 16 and August 17, 2016.

1

## II. JURISDICTION AND VENUE

2. This Court has Admiralty and Maritime Jurisdiction and the claim in within the meaning of Fed. R. Civ. P.9 (h). Admiralty and Maritime Jurisdiction is based upon 28 U.S.C. §1331 and 28 USC §1333.

3. Venue of this action in this district is proper pursuant to 28 U.S.C. Sec. 1391 (b), since the incident occurred on the navigable waters of the United States in connection with traditional maritime activity such as ferrying passengers from the Dominican Republic to Puerto Rico aboard the M/V Caribbean Fantasy and/or since defendant consented to be sued in PR Federal Court pursuant to Admiralty and Maritime law.

## III. REQUEST FOR JURY TRIAL

4. Plaintiff requests trial by jury.

## IV. PARTIES

5. Plaintiff**, Héctor Luis O'Farril Lamb,** of legal age, single, with the following address: Bo. Dos Bocas, Carretera 858 KM 4.6, Trujillo Alto, PR 00976. Plaintiff's postal address: HC 645, BOX 8312, Trujillo Alto, PR 0076.

6. Defendant **AMERICA CRUISE FERRIES**, **INC.** (herein "ACF") is a corporation duly registered and authorized by the state of Puerto Rico with principal offices in Concordia 249, Mayaguez, PR 00680. Their Resident Agent is: Néstor González García, located at Concordia 249, Mayaguez, PR 00680.

7. Defendant **BAJA FERRIES USA** (herein "BAJA FERRIES") is a corporation duly registered and authorized by the state of Miami, Florida with principal offices in 2601 S Bayshore Dr # 1110, Miami, FL 33133, USA.

8. Defendant **BAJA FERRIES S.A. de C.V.** (herein "BAJA FERRIES") is a corporation duly registered and authorized in Mexico, with the following location: Ignacio Allende 1025, Zona Central, 23000 La Paz, B.C.S., Mexico.

9. Codefendant **STEAMSHIP MUTUAL MANAGEMENT (BERMUDA) LTD**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the Bahamas, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Complaint, a policy of liability insurance issued to Baja Ferries SA de CV and/or Baja Ferries USA and/or ACF and/or to the vessel **Caribbean Fantasy**, covering all risks for injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel **Caribbean Fantasy.** Steamship Mutual Management (Bermuda) Ltd address is as follows "Washington Mall II, Unit 416 22, Church Street, PO BOX HM 601, Hamilton, HM, CX, Bermuda".

10. Codefendant **THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED (BERMUDA)**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the United Kingdom, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Complaint, a policy of liability insurance issued to Baja Ferries SA de CV and/or Baja Ferries USA and/or ACF and/or to the vessel **Caribbean Fantasy**, covering all risks for injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel

**Caribbean Fantasy.** Said codefendant's address is as follows "Washington Mall II, Unit 416 22, Church Street, PO BOX HM 601, Hamilton, HM, CX, Bermuda".

11. Codefendant **THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION (BERMUDA) LIMITED**, [hereinafter "P&I"] was and still is a liability insurer incorporated in the United Kingdom, who had issued and maintained in full force and effect, at the time of the injury and damages as alleged throughout this Complaint, a policy of liability insurance issued to Baja Ferries SA de CV and/or Baja Ferries USA and/or ACF and/or to the vessel **Caribbean Fantasy**, covering all risks for injuries and accidents that would occur on and within said vessels, and specifically, which would cover liabilities and personal injuries occasioned to crewmembers working aboard the vessel **Caribbean Fantasy.** Said codefendant's address is as follows "Washington Mall II, Unit 416 22, Church Street, PO BOX HM 601, Hamilton, HM, CX, Bermuda".

V.   STATEMENT OF CLAIM

a. **Information regarding M/V Caribbean Fantasy (herein "The Ferry")**

12. At all relevant times ACF managed the vessel known as **M/V CARIBBEAN FANTASY**.

13. At all relevant times ACF operated the vessel known as **M/V CARIBBEAN FANTASY**.

14. At all relevant times ACF lease the vessel known as **M/V CARIBBEAN FANTASY**.

15. At all relevant times BAJA FERRIES owned the vessel known as **M/V CARIBBEAN FANTASY**.

16. At all relevant times BAJA FERRIES provides maintenance to the vessel known as **M/V CARIBBEAN FANTASY**.

**b. The incidents**

17. On July 19, 2016, Plaintiff traveled to Santo Domingo, Dominican Republic and returned on August 16, 2016, on the Ferry.

18. Plaintiff paid the total amount of $137.50 for his ticket and for the cabin.

19. On August 16, 2016, Plaintiff boarded the Ferry at approximately 5pm and between 7pm-8pm the Ferry departed.

20. The Ferry carried approximately 512 passengers/crewmembers.

21. Although Plaintiff was happy to return to PR, but his happiness was destroyed when he started noticing the Ferry's defects.

22. Plaintiff boarded the Ferry with a luggage and a personal bag.

23. Since the air conditioning was not working well, Plaintiff complained with the receptionist.

24. Due to the high temperatures at the stateroom, Plaintiff was not able to sleep.

25. Plaintiff noted that still there was no good air circulation on the common areas.

26. On August 17, 2016, at approximately 7am, Plaintiff was instructed to go to the bow.

27. Around 7am, Plaintiff noticed that the Ferry started burning and Plaintiff noticed heavy smoke.

28. While at the bow, he saw a chaotic scene, since people were hysterical, screaming, pushing each other, shouting and some of them even jumped overboard to the ocean.

29. While waiting at the bow, Plaintiff started inhaling smoke generating from the fire onboard the Ferry.

30. Due to the fire, the Ferry's crewmembers instructed passengers to evacuate the Ferry.

31. Crewmembers stated that the first ones that will board the life boats were minors, mothers and elders.

32. After inhaling smoke for over an hour, Plaintiff got dizzy and vomited.

33. Plaintiff does not know how to swim.

34. Plaintiff was ordered to throw himself into the slides.

35. Defendants provided life vest to Plaintiff and at that moment he panicked.

36. Plaintiff thought that he would die if he fell to the ocean since he was unable to swim.

37. Since Plaintiff was unable to slide, he lie down on the floor due to his emotional and physical condition provoked by the heavy smoke.

38. While Plaintiff was on the floor unable to move, the USCG sent an helicopter to the Ferry and while on the air, picked up Plaintiff with ropes and was sent to the USCG's offices.

39. Plaintiff was provided medical attention by the paramedics.

40. Plaintiff was extremely anxious, with crying spells, with nausea, dizzy, stomach ache, dehydrated and weak, pain on his waist.

41. After the Ferry's incident, Plaintiff attended to a general physician to received medical treatment due to the fact he felt nausea, dizzy, weak and coughing.

42. As a result of this incident, Plaintiff assured that he will never travel again on a ferry/cruise.

43. Such injuries occurred as a proximate result of the unsafe, negligent and unseaworthy condition of the vessel operated by Defendants.

## FIRST CAUSE OF ACTION – NEGLIGENCE

44. The allegations contained all in previous paragraphs are re-alleged as if fully alleged herein.

45. The Ferry was built in 1989 in Japan, and is Baja Ferries property.

46. The Ferry's flag is from Panamá.

47. The Ferry do commercial activities between Dominican Republic and Puerto Rico such as ferrying passengers.

48. Between 2011 and 2015, the US Coast Guard found at least 107 security deficiencies, which most of the them (approximately 44) were related to the fire system.

49. Some of those deficiencies were related to the incorrect operating of the fire screen doors, which usually were not able to be close and/or were reported as open when they were close.

50. On an October 16, 2014, Inspection made by the USCG stated that the "inflatable liferafts used in conjunction with MES shall comply with the requirements of Section 4-2. The liferafts 4, 13,17,18 &24 were found with the painter lines falling off the liferaft line storage pockets".

51. A January 2015 inspection made by the United States Coast Guard ("herein "USCG") stated that oil fuel lines should be screened or protected in some way to avoid any pray or leakage onto ignition sources.

52. Specifically in April 17, 2015, the USCG stated that the "fire screen doors shall be capable of closing at an angle of inclination of up to 3.5 degrees. The following double leaf doors were found out of sequencing and prevents the doors from closing" and that "all waste receptables shall be constructed of non combustible materials. Waste receptacles located on upper deck (open) were found to be plastic".

53. During the past 36 months, USCG's inspections of the Ferries had led to detentions.

54. In October, 2015, the Ferry was detained in San Juan for three days by the U.S. Coast Guard for three deficiencies related: fire safety measures (international shore connection); crew certificates (certificates of competency) and ship's certificates and documents (safety manning document).

55. Other warnings provided by the US Coast Guard were that the fire extinguishers were not working well.

56. The US Coast Guard found deficiencies on the ceiling sprinklers that stop the flames.

57. Between March and July 2016, the Ferry underwent maintenance work at Europe.

58. Even though defendants informed the public that they would start operating on July 1, 2016, they were unable to provide ferrying service to passengers since the Ferry was still in Europe receiving maintenance.

59. In July 2016, while refueling the Ferry at Port of Gibraltar, prior to continuing across the Atlantic to Puerto Rico, the Ferry was detained for six days and related to deficiencies related to the auxiliary engines.

60. After the alleged repairs at the Port of Gibraltar, the Ferry continued its voyage to Puerto Rico.

61. While in their voyage, the Ferry's engines failed.

62. The ferry was unable to continue their voyage for approximately a day.

63. Due to said mechanical failure, the Ferry changed its voyage and travel to Santo Domingo, Dominican Republic.

64. At the Santo Domingo's Port, the Ferry allegedly repaired the engine.

65. Early August, 2016, the Ferry arrived at the Port of San Juan, Puerto Rico.

66. During the USCG inspection, they determined that one of three life boats were working.

67. A USCG inspection early August 2016, found four deficiencies related to fire safety measures and one related to the propulsion and auxiliary machinery.

68. During the USCG inspection conducted on early August 2016, they found a total of 7 deficiencies.

69. During August 17, 2016's emergency, the Ferry's life boats and sliding were not working properly and/or were not properly installed.

70. Two of the three life boats were not working well.

71. One life boat got stuck while descending.

72. The second life boat, got stuck while descending to the ocean and when it reached the ocean its engines failed.

73. This second life boat, was rescued by other vessel and/or vessels.

74. During the voyage from Santo Domingo to San Juan, and while Plaintiff was onboard the Ferry, the air conditioner was not working well and/or was not working at all.

75. Such was an indication of mechanical and/or electrical failure.

76. Due to information and/or belief the Fire started at 7.15 am at the machinery room.

77. The Fire at the Ferry started when the Ferry was near the Thermoelectric in Levittown, PR.

78. Defendants lack of repair and/or failure to provide proper maintenance to the Ferry and/or failure to properly and immediately repair the deficiencies informed by the USCG on their report dated August 17, 2016, among others, provoked the fire inside the Ferry.

79. Plaintiff's damages were a direct consequence of defendants' negligence by: (i) failing to provide a safe ferry; (ii) failing to protect the

passengers; (iii) failing to maintain safe premises; (d) failing to provide adequate emergency instructions; (iv) by failing to hire adequate personnel which were not well trained and/or had lack of knowledge on emergency proceedings and/or had lack of knowledge on descending life boats; (v) by failing to repair and/or properly repair the engine, electric and/or propulsion defects; (vi) Defendants knew or should have known of the Ferry's mechanical, electrical and/or propulsion defects and did not repair it and/or failed to properly repair them; (vii) Defendants' breached their duty of care to Plaintiff to the extent they failed to properly maintain properly working the life boats and other safety equipment; (viii) defendant provoked Plaintiff unnecessary delay in the evacuation of the Ferry; (ix) failed to cancel the voyage despite knowing that the vessel was not properly working; (x) the Ferry was operated knowing was unseaworthy due to the defective engines, life boats, electricity, air conditioners, emergency equipment and procedures.

80. Due to the abovementioned, defendants failed to comply with the general maritime and admiralty law of the United States and with the Art. 1802 and 1803 of the PR Civil Code.

81. Defendants actions and omissions, through fault and/or negligence, caused damages to Plaintiff, in violation of Art. 1802 and 1803 of the PR Civil Code and General Maritime Law entitling plaintiff to damages caused as a result of those acts and omissions.

82. Defendants are jointly liable against Plaintiff.

83. Defendants' negligence and/or intentional acts were a proximate legal cause of Plaintiff's injury.

### SECOND CAUSE OF ACTION – UNSEAWORTHINESS

84. The allegations contained all in previous paragraphs are realleged as if fully alleged herein.

85. Defendants maintained an unsafe place for plaintiff and exposed them to danger while ferrying passengers with a Ferry with serious engine, electricity and propulsion defects and also with the life boats, mechanical and technical defects, and with lack of maintenance to the Ferry, as abovementioned.

86. The vessel was unseaworthy and defendants' failed to repair the dangerous situation.

87. Plaintiff's injuries occurred as a proximate result of the unsafe and unseaworthy condition of the vessel, which was managed, operated and/or maintained by defendants. In addition, said injuries were caused in whole, as a proximate result of negligence on the part of the Defendants, its agents, servants and/or employees.

### THIRD CAUSE OF ACTION – CLAIM AGAINST THE P&I CLUB

88. The foregoing paragraphs are realleged and reasserted herein.

89. Co-defendants **STEAMSHIP MUTUAL MANAGEMENT (BERMUDA) LTD; THE STEAMSHIP MUTUAL UNDERWRITING ASSOCIATION LIMITED; STEAMPSHIP INSURANCE MANAGEMENT SERVICES LTD;** is liable for the negligence, fault, legal violations and unseaworthy conditions of their insured up to the coverage limit of the certificate of entry to their benefit. Plaintiff hereby

exercises their right to present a direct action against the aforementioned protection and indemnity club.

## DAMAGES

90. As a result thereof, plaintiff suffered and continue suffering: lungs condition, post traumatic stress disorder, major depressive disorder, unable to get close to the ocean, muscle pain, dizziness, nausea, psychiatric and psychological damages, extreme panic, sadness, anxiety during the ordeal, vomit, a sense of despair and helplessness, dehydration, a lack of interest in daily activities, insomnia and other sleep disturbances such as nightmares, depression, his tranquility has been seriously affected, all of which affects his daily activities.

91. Plaintiff was unable to work for over three days.

92. Plaintiff damages herein alleged apply to all causes of actions.

93. As a result of the events described herein, Plaintiff has suffered and continues to suffer irreparable physical, economical and emotional damages.

## VI. RELIEF

94. Wherefore, Plaintiff prays that this court enter judgment in favor of Plaintiff and against defendants and award the plaintiff the following monetary amounts, totaling $1,450,000.00 to be paid by defendants:

　　a. for Plaintiff emotional and physical damages and his pain and suffering an amount in excess of $1,250,000.00.

　　b. Punitive damages for an amount not less than $200,000.00.

c.  Provide for the payment of all applicable interests, including prejudgment interest, together with reasonable attorney's fees, litigation expenses and the costs of this action.

d.  Grant plaintiff such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 27th day of September, 2016.

**BELLVER ESPINOSA LAW FIRM**
Condominio El Centro I, Suite 801
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Tel(787) 946-5268/Fax(787)946-0062

S/Alejandro Bellver Espinosa
Alejandro Bellver Espinosa, Esq.
U.S.D.C. – P.R. 225708
Email: alejandro@bellverlaw.com

/s/ Krystal Santiago Sánchez
Krystal Santiago Sánchez, Esq.
U.S.D.C. – PR 303611
Email: krystal@bellverlaw.com